# Exhibit A

STATE OF MINNESOTA / _Fourth_____ JUDICIAL DISTRICT / _Hennepin_____ COUNTY DISTRICT COURT

PAUL HANSMEIER,
    Plaintiff,

v.

_HRP Woodbury II, LLC_____
_STORE Master Funding VII, LLC_____
_____
_____ ; and

_Merrick Garland_____
    Defendants.

Case No.: _Unfiled_____
SUMMONS

THIS SUMMONS IS DIRECTED TO: _STORE Master Funding VII, LLC_____

1. YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

3. YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiff's Complaint. In your Answer, you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6. ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to be or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send you written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Date: _March 4, 2022_____

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Settlement Demand Letter
DATE: 03/03/2022 06:16:25 AM

March 4, 2022

Dear Tavern:

I admire and respect Tavern and wish it continued success. The point of the enclosed lawsuit is that Tavern has issues with respect to accessibility compliance and I am asking you to address them. Compliance with the Americans With Disabilities Act and the Minnesota Human Rights Act are important requirements of running a business.

I am willing to settle my claims right now. All I am asking is that you fix the issues identified in the enclosed documents and make a modest payment to the Access Coalition. If you do not wish to settle, then please have your attorney contact me.

One benefit of settling right now is that if I become aware of an issue at Tavern, Woodbury, in the future, then I will provide Tavern with notice of the issue, which will allow you to address potential issues without the need for a lawsuit.

If you are intersted in settling please contact me at the address below and I will send you settlement paperwork. Once we have both signed the paperwork I will dismiss the case and we will be done.

Sincerely,

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Complaint - 1/5
DATE: 02/10/2022 06:26:19 PM

STATE OF MINNESOTA / FOURTH JUDICIAL DISTRICT / HENNEPIN COUNTY DISTRICT COURT

PAUL HANSMEIER,
    Plaintiff,

v.

HRP Woodbury II, LLC                                                    COMPLAINT
STORE Master Funding VII, LLC
                    ; and                JURY TRIAL DEMANDED
Merrick Garland
    Defendants.

I. Introduction.

    1. Plaintiff Paul Hansmeier's personal mission is to help people with disabilities gain equal access to society. Hansmeier has been pursuing this mission for nearly one decade, including in his capacity as an attorney. To his knowledge, Hansmeier is the only attorney in Minnesota's history to take an architectural barrier disability discrimination case to trial, prevail and successfully defend the judgment on appeal.

    2. Due to personal challenges, Hansmeier must find ways other than the practice of law to further this important and decent cause. Hansmeier intends to do so via "pairs testing."

    3. Pairs testing is a frequently used civil rights enforcement method in which two individuals (one of whom is a member of a protected class) visit a covered entity to see if the member of the protected class experiences discrimination. Pairs testing is used to ferret out discrimination in employment, housing and public accommodations, among other areas.

    4. Hansmeier seeks to conduct pairs testing at Defendant HRP Woodbury II, LLC 's ("Operator Defendant") bar and restaurant known as "Tavern" and located in Woodbury, MN the "Facility").

    5. The Facility operates from real property owned by Defendant STORE Master Funding VII, LLC ("Owner Defendant").

    6. Unfortunately, the Owner and Operator Defendants are failing to comply with state and federal accessibility laws that require them to make the Facility useable by people with disabilities. This non-compliance is obstructing Hansmeier's pairs testing operations.

    7. Hansmeier seeks an injunction prohibiting the Owner and Operator Defendants from violating the state and federal accessibility laws specified herein.

    8. Based on his experience in disability rights enforcement, Hansmeier expects to experience retaliation based on his petitioning efforts in this case, his pairs testing at the Facility and his association with post-pairs testing accessibility enforcement litigation (collectively, the "Covered Activity"). This concern is heightened based on Hansmeier's status as a vulnerable adult.

    9. Hansmeier seeks an injunction prohibiting all of the Defendants from retaliating against Hansmeier based on his participation in the Covered Activity.

    10. Hansmeier also seeks a declaration that the federal statutes and regulations specified herein (the "Challenged Restrictions") violate the First Amendment as applied to the Covered Activity and an injunction prohibiting Defendants from enforcing or threatening to enforce the Challenged Restrictions against Hansmeier on account of his participation in the Covered Activity. This relief is necessary because government officials and private persons have threatened to enforce and have enforced the Challenged Restrictions against Hansmeier on account of Hansmeier' participation in the Covered Activity.

-------------------------------------------------------------------

11-19. [Reserved].

II. Jurisdiction and Venue.

20. The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1367, as the claims in this action either arise under federal law or are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The United States has waived its sovereign immunity pursuant to 5 U.S.C. 702. The Court may award Hansmeier declaratory and injunctive relief pursuant to the Declaratory Judgment Act and the Court's inherent equitable jurisdiction.

21. Venue in this district is proper because Defendants have sufficient contacts to be subject to personal jurisdiction in this district.

22-29. [Reserved].

III. Parties.

30. Plaintiff Paul Hansmeier is a natural person and is a resident of the State of Minnesota.

31. The Operator Defendant is a limited liability company that operates the bar and restaurant known as "Tavern" located in Woodbury, MN. Tavern is a place of public accommodation within the meaning of the ADA and MHRA.

32. The Owner Defendant is a limited liability company that owns the real property from which "Tavern" operates.

33. Defendant Merrick Garland is sued in his official capacity as the Attorney General of the United States. As the Attorney General, Garland is responsible for enforcing the laws of the United States. As the head of the Department of Justice, Garland is responsible for overseeing its officers and employees.

34. Defendant [reserved]

35-39. [Reserved].

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Complaint - 2/5
DATE: 02/11/2022 06:37:55 AM

IV. Facts.

A. Paul Hansmeier's Personal Mission is to Help People With Disabilities Gain Equal Access to Society.

40. Paul Hansmeier's personal mission is to help people with disabilities gain equal access to society. Hansmeier has been pursuing this mission for nearly one decade.

41. Hansmeier was first exposed to the disability rights movement as an attorney when he provided pro bono legal representation to an individual with a disability who was unable to access critical government services because of his disability.

42. In the course of that representation, Hansmeier learned more about the issues facing people with disabilities in our society, which range from structural economic inequities to the lack of accessible housing to an inability to access public accommodations and government programs. Hansmeier was struck by the extent of these issues and was interested in doing his part to help address them.

43. Hansmeier started accepting representation of disability discrimination cases. Hansmeier's first cases were brought under Title III of the Americans With Disabilities Act and the Minnesota Human Right Act, both of which prohibit discrimination in places of public accommodation. In these cases, the claim was that a business was discriminating against people with disabilities by failing to remove architectural barriers to access.

44. Hansmeier's disability discrimination practice grew into a practice in which Hansmeier helped people with disabilities gain access to education, health care, government services, housing and public accommodations.

45. Hansmeier's practice attracted significant media attention. This attention shined a spotlight on disability discrimination issues in Minnesota and prompted the Minnesota Chamber of Commerce, among other organizations, to sponsor seminars and other initiatives aimed at reducing discrimination on the basis of disability at Minnesota public accommodations. These efforts resulted in voluntary compliance with state and federal accessibility laws at a significant number of Minnesota public accommodations.

46. Though many of Hansmeier's clients' cases were resolved through settlement, other cases were contested. The contested cases allowed the courts to establish important precedents around the issues of standing, mootness, pleading, discovery and evidentiary burdens in the disability discrimination context. To his knowledge, Hansmeier is the only attorney in Minnesota's history to take an architectural barrier disability discrimination case to trial, prevail and defend the judgment on appeal. In its opinions, the United States Court of Appeals for the Eighth Circuit has specifically noted Hansmeier's role in developing Eighth Circuit jurisprudence on the issue of standing in disability discrimination cases.

47. Hansmeier also participated in volunteer efforts in the disability space. For example, Hansmeier and his employees volunteered at the facility then known as the Courage Center. Hansmeier also provided pro bono representation in disability discrimination matters. For example, Hansmeier provided pro bono assistance to a person with a disability whose dentist did not want to treat them based on difficulties associated with the person's disability and was able to help the person obtain dental care.

48. In 2016, due to personal challenges, Hansmeier had to find ways other than the practice of law to further the cause of disability rights.

49. From 2017-2019, Hansmeier did so as a paralegal at a local law firm firm, which specialized in disability rights law.

50. As a paralegal, Hansmeier drafted legal memoranda and appellate briefs, which helped further establish disability discrimination precedents.

51. Notwithstanding his suspension from the practice of law. Hansmeier continued to be contacted by people with disabilities who were experiencing discrimination on the basis of their disability. Though he was unable to offer them legal advice, Hansmeier assisted these individuals in other ways, including by referring these individuals to people that might be able to help them with the issues they were facing.

-------------------------------------------------------------------------------------------------------

52. In 2019, Hansmeier self reported to federal prison. There, Hansmeier continued to hear from people with disabilities who were having trouble accessing public accommodations. For example, Hansmeier heard from a gentleman who used a wheelchair for mobility who was unable to access his mother's nursing home. According to the gentleman, he reached out to Hansmeier because Hansmeier at least cared about these issues.

53. While in federal prison, Hansmeier continued to hear about challenges facing people with disabilities. He listened to an interview given by disability rights movement leader Judy Heumann, who opined that the disability rights movement simply needed more enforcement of the laws that are already in place. Hansmeier read articles in the Wall Street Journal, which described the challenges that people with disabilities faced in obtaining employment. Hansmeier heard news reports on Minnesota Public Radio about challenges faced by students with disabilities at Minnesota State University Mankato in locating study carrells in the library.

54. These experiences have motivated Hansmeier to spend the time remaining in his term of imprisonment by furthering his personal mission.

55. Hansmeier is doing so by coordinating pairs testing.

56-59. [Reserved].

B. Hansmeier's Pairs Testing.

60. Pairs testing is a frequently used civil rights enforcement method in which two individuals (one of whom is a member of a protected class) visit a covered entity to see if the member of the protected class experiences discrimination.

61. Pairs testing is supported by Supreme Court and circuit court precedent.

62. Hansmeier's pairs testing involves a person with a mobility-related disability and a person without a mobility-related disability visiting entities covered by state and federal accessibility laws to test for disparate treatment. In the case of a restaurant, for example, pairs testing would involve testers visiting the restaurant, having a meal, paying the bill and enquiring about employment opportunities---and then comparing their experiences to ascertain disparate treatment.

63. Hansmeier's pairs testing requires some minimal level of compliance with accessibility laws. Pairs testing is not possible if architectural barriers prevent testers from entering a facility. In the restaurant example, pairs testing would not be possible if a step at the restaurant's entrance prevented a person who uses a wheelchair from entering the restaurant.

64-69. [Reserved].

C. Hansmeier's Pairs Testers.

70. Hansmeier's pairs testers with disabilities are people with mobility-related disabilities who share Hansmeier's personal mission of helping people with disabilities gain equal access to society.

71. Hansmeier's pairs testers receive a modest payment to conduct pairs testing at a facility and complete a survey regarding their response.

72. Hansmeier's pairs testers are closely related to Hansmeier in the sense that they share an identity of mission with him and enter into a contract with him before conducting pairs testing and are part of a collective effort with Hansmeier to open up society to people with disabilities via pairs testing.

73. Hansmeier's pairs testers are not attorneys and it would be difficult, dangerous and expensive for them to assert their own rights under accessibility laws.

74. State and federal accessibility laws are complex and it would be difficult for pairs testers without legal training to successfully navigate a claim to a favorable judgment, given the intricate requirements of standing, pleading and presentation on the merits. This would be true even in circumstances in which, objectively speaking, they have an entitlement to relief on the merits.

75. Pairs testers would have a difficult time hiring an attorney to assist them. As Hansmeier experienced first hand, attorneys

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

-------------------------------------------------------------------------------

who provide representation in this area can expect to encounter significant backlash which would harm their other areas of practice. The United States Attorney for the District of Minnesota threatened Hansmeier with criminal prosecution under the federal mail fraud, wire fraud and extortion statutes based on his representation of people with disabilities. Assistant United States Attorney David MacLaughlin described Hansmeier as a "threat to public safety" based on his representation of people with disabilities. The business community coordinated a public relations campaign aimed at attacking Hansmeier's reputation based on his representation of people with disabilities. Hansmeier was not the only attorney to experience this backlash. Other local attorneys who followed Hansmeier's lead into the disability rights space experienced similar backlash.

76. Even if prospective plaintiffs could find an attorney, hiring an attorney would be expensive. Standard billing rates for civil rights attorneys in Minnesota are around $400/hour. A disability rights plaintiff should expect to incur around $75,000 in attorneys' fees to take a disability discrimination case through trial. Disability discrimination laws authorize judges to award prevailing plaintiffs their attorneys' fees, but such awards are rare. To Hansmeier's knowledge, no district court judge in the U.S. District Court for the District of Minnesota has ever awarded a disability rights plaintiff their attorneys' fees in an architectural barriers disability discrimination case.

77. It would be dangerous for pairs testers to assert their own claims. The United States Attorney for the District of Minnesota has dispatched Federal Bureau of Investigation agents to interview people with disabilities who bring disability discrimination claims and used cruel slurs to refer to people with disabilities who enforce their rights under accessibility laws; attempts to access the courts could result in a criminal prosecution and a lengthy term of imprisonment. Negative media coverage has instigated attacks on such individuals as well. One of Hansmeier's disability rights clients was assaulted at the Mall of America by someone who punched him in his stomach. Another one of Hansmeier's disability rights clients was stalked while driving around Marshall, Minnesota.

78. Hansmeier is well-positioned to assert the rights of his pairs testers. Hansmeier has substantial experience with prosecuting disability discrimination claims and thus has the ability to represent himself. Hansmeier's reputation is already in tatters as a result of his criminal conviction, so the traditional reputational counterattacks would be ineffective against him. Finally, Hansmeier's personal mission aligns his interests with those of his pairs testers.

79. [Reserved].

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Complaint - 3/5
DATE: 02/11/2022 06:39:51 AM

- D. Unlawful Architectural Barriers at the Facility are Obstructing Hansmeier's Pairs Testing

80. Hansmeier seeks to conduct pairs testing at the Facility, but unlawful architectural barriers at the Facility are obstructing him from doing so.

81. These unlawful architectural barriers are disclosed in the Report attached as Exhibit A hereto.

82. These unlawful architectural barriers obstruct Hansmeier's pairs testing because they make it substantially more difficult and dangerous for Hansmeier's pairs testers to physically access the Facility.

83. The Facility's lack of accessible parking, for example, makes it more difficult and dangerous for Hansmeier's pairs testers to transfer between their vehicles and their mobility devices, creates a risk that a later arriving vehicle will block access to the driver's side door and forces people with disabilities to traverse a path of travel that contains risks of slipping, falling, tipping and injury.

84. Hansmeier is put in a position of having to pay for someone to assist his pairs testers with safely entering the Facility, which would make Hansmeier's pairs testing substantially more expensive, or to forego pairs testing so as to avoid the liability and other issues associated with sending pairs testers to a facility he knows to be difficult and dangerous for them to use.

85. These unlawful architectural barriers have forced Hansmeier to divert time and resources away from coordinating pairs testing at other facilities to addressing the Facility's access issues.

86-89. [Reserved].

E. The Challenged Restrictions.

i. Federal Mail Fraud and Fraud Statutes.

90. The federal mail and wire fraud statutes, 18 U.S.C. 1341 and 1343, respectively, prohibit "any scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." using the mails or the wires.

91. A violation of the mail-wire fraud statues carries a twenty year maximum prison sentence and a fine. 18 U.S.C. 1341 and 1343.

92. The phrase, "scheme to defraud" is not defined by statute. When Hansmeier practiced in the disability discrimination area, his clients were sued by public accommodations who alleged that disability rights plaintiffs engage in a scheme to defraud when they participate in testing-related ADA enforcement litigation. A search of legal databases reveals that other disability rights plaintiffs have been forced to defend against similar claims. The United States Attorney for the District of Minnesota, threatened Hansmeier with prosecution under the federal mail and wire fraud statutes based on his involvement with testing-related ADA enforcement litigation. In 2021, Federal Bureau of Prisons officials charged Hansmeier with use of the mails for an illegal purpose and referred Hansmeier to the United States Attorney for the District of Minnesota for criminal prosecution under the mail and wire fraud statutes based on Hansmeier's involvement with testing-related ADA enforcement litigation.

ii. Hobbs Act.

93. The Hobbs Act imposes criminal liability on "whoever in any way or degree obstructs, delays, or affects commerce or the movements ... by robbery or extortion." 18 U.S.C. 1951(a).

94. "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right." 18 U.S.C. 1951(b)(2).

95. A violation of the Hobbs Act carries a twenty year maximum prison sentence and a fine. 18 U.S.C. 1951(a).

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

96. When Hansmeier practiced in the disability discrimination area, his clients were sued by public accommodations who alleged that disability rights plaintiffs engage in extortion when they participate in testing-related ADA enforcement litigation. A search of legal databases reveals that other disability rights plaintiffs have been forced to defend against similar claims. The Attorney General, acting through the United States Attorney for the District of Minnesota, threatened Hansmeier with criminal prosecution under the Hobbs Act based based on his involvement with testing-related ADA enforcement litigation. In 2021, Federal Bureau of Prison officials charged Hansmeier with extortion and referred Hansmeier for criminal prosecution under the federal extortion statute based on his involvement with testing-related ADA enforcement litigation.

     iii. Racketeer Influenced and Corrupt Organizations Act.

97. The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961-1968, prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering or conspiring to do so. 18 U.S.C. 1961(c) and (d).

98. Congress defined "racketeering" activity to include a variety of state and federal predicate crimes, including violations of the federal mail fraud and wire fraud statutes, 18 U.S.C. 1341 and 1343, and Hobbs Act violations, 18 U.S.C. 1951. 18 U.S.C. 1961(1).

99. RICO violations carry both criminal and civil penalties. Persons convicted of violating RICO's criminal provisions are subject to imprisonment and forfeiture of certain assets. 18 U.S.C. 1963. Private parties may bring civil claims over injuries to their business or property caused "by reason of" a defendant's violation of RICO. 18 U.S.C. 1964(c). Under this provision, a private plaintiff may sue to recover treble damages and attorney's fees caused by a RICO violation.

100. Public accommodation defendants have brought civil RICO counterclaims against disability discrimination plaintiffs, alleging, in a manner similar to the United States Attorneys' threats against Hansmeier, that testing-related ADA litigation is fraudulent (in violation of the federal mail and wire fraud statutes) and extortionate (in violation of the Hobbs Act). Hansmeier's former clients have been sued for RICO violations based on allegations that testing-related ADA enforcement litigation violates RICO and Hansmeier expects to face RICO claims based on his participation in the Covered Activity.

     iv. Federal Bureau of Prisons' Inmate Discipline Program.

101. The Federal Bureau of Prisons is governed by its program statements. The Inmate Discipline Program program statement, codified at 28 C.F.R. Part 541, defines a series of Prohibited Acts and assigns these acts a identification code. 28 C.F.R. Part 541 Subpart A.

102. Prohibited Act 196 prohibits inmates from "use of the mail for an illegal purpose...." Id.

103. Inmates who commit Prohibited Act 196 are subject to disciplinary sanctions, which include: a loss of up to all non-vested good time; loss of up to 41 days of vested good time; forfeiture of up to 41 days of earned First Step Act credits; up to 12 months disciplinary segregation; monetary restitution; a monetary fine; loss of privileges (e.g., visiting, telephone, commissary, movies, recreation); a change in housing quarters; removal from programs and/or group activities; loss of job; impounding of personal property; confiscation of contraband; restriction to quarters; and extra duty. Id.

104. The Federal Bureau of Prisons, charged Hansmeier with Prohibited Act 196 based in relevant part on allegations that Hansmeier "would file lawsuits against businesses that were not in compliance with the Americans With Disabilities Act on behalf of individuals with disabilities, even though no such individuals had actually filed a complaint." In addition, the Federal Bureau of Prisons, subjected Hansmeier to nearly 6 months' administrative detention pursuant to their authority under 28 C.F.R. Part 541 Subpart B while they investigated Hansmeier for engaging in this conduct. Finally, the Federal Bureau of Prisons, referred Hansmeier to the United States Attorney for the District of Minnesota for criminal prosecution based on Hansmeier's participation in this activity.

105. Prohibited Act 204 prohibits inmates from "Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing." Id.

106. Inmates who commit Prohibited Act 204 are subject to disciplinary sanctions, which include: forfeiture of up to 50% of non-vested good conduct time or up to 60 days, whichever is less; disallowance of 14-27 days of good conduct time available for a year; forfeiture of up to 27 First Step Act Time Credits; up to 6 months disciplinary segregation; monetary restitution; a monetary fine; loss of privileges (e.g., visiting, telephone, commissary, movies, recreation); a change in housing quarters; removal from program and/or group activities; loss of job; impounding of personal property; confiscation of contraband; restriction to quarters; and extra duty.

------------------------------------------------------------------------------

107. The Federal Bureau of Prisons, charged Hansmeier with Prohibited Act 204 based on allegations that Hansmeier, "would file lawsuits against businesses that were not in compliance with the Americans With Disabilities Act on behalf of individuals with disabilities, even though no such individuals had actually filed a complaint." In addition, the Federal Bureau of Prisons, subjected Hansmeier to nearly 6 months' administrative detention pursuant to their authority under 28 C.F.R. Part 541 Subpart B while they investigated Hansmeier for engaging in this conduct. Finally, the Federal Bureau of Prisons referred Hansmeier to the United States Attorney for the District of Minnesota for criminal prosecution based on their belief that Hansmeier engaged in this activity.

108. The federal mail and wire fraud statutes, the Hobbs Act, the RICO act and the Federal Bureau of Prisons' Inmate Discipline Program, 18 U.S.C. 1341, 1343 and 1951, 18 U.S.C. 1961-1968 and 28 C.F.R. Part 541, are referred to collectively in this complaint as the "Challenged Restrictions."

109-110. [Reserved].

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

----------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Complaint - 4/5
DATE: 02/11/2022 06:43:22 AM

- F. Retaliation

111. Hansmeier has experienced significant retaliation on account of his participation in testing-related disability discrimination petitioning activity.

112. The United States Attorney for the District of Minnesota, has taken the following adverse actions against Hansmeier based on Hansmeier's participation in disability discrimination petitioning activity:

    a. Threatened to bring criminal charges against Hansmeier;

    b. Described Hansmeier as threat to public safety in court filings;

    c. Used cruel slurs to refer to Hansmeier and his clients;

    d. Encouraged the Federal Bureau of Prisons to retaliate against Hansmeier;

    e. Treated Hansmeier more harshly in Hansmeier's criminal matter than he would have if Hansmeier had not represented people with disabilities in disability discrimination cases;

    f. Encouraged the district court judge presiding over Hansmeier's criminal case to sentence Hansmeier more harshly based on Hansmeier's representation of people with disabilities; and

    g. Engaged in other First Amendment retaliation by, for example, filing entirely without merit motions seeking to ban Hansmeier from asserting disability discrimination claims in the United States District Court for the District of Minnesota.

113. The United States Attorneys' adverse actions served no legitimate public interest. The public interest is served when people address their grievances in the courts versus resorting to such "self help" remedies, as rioting, looting or other misconduct. Moreover, the public interest is served when state and federal laws are consistently enforced. The public interest is also served by reducing or eliminating discrimination on the basis of disability.

114. Finally, the cases Hansmeier aided and encouraged were modeled after cases that have succeeded in other circuits, which would undermine any suggestion by the United States Attorney that Hansmeier's cases lacked merit. Indeed, the positions that Hansmeier took in his cases were consistent with positions that past United States Attorneys have taken when intervening in private disability rights enforcement actions to represent the United States' interests.

115. The Federal Bureau of Prisons, has taken the following adverse actions against Hansmeier based on his participation in disability discrimination petitioning activity:

    a. Subjected Hansmeier to administrative detention for nearly six months. At Sandstone FCI, administrative detention is associated with significantly inferior living conditions than those associated with general population. In administrative detention, for example, inmates are forced to sit in their underwear in tiny, windowless cells for 23 hours a day with no access to many of the basic requirements of daily living, communications with family (except for one 15 minute phone call per month and letters that are greatly delayed), legal materials, news or other basics. Conditions in administrative detention are so grim that staff are required to make suicide checks every 30 minutes. By his math, Hansmeier underwent approximately 8,640 suicide checks during the Bureau of Prisons' retaliatory administrative detention. Hansmeier's administrative detention served no penological interest, as his legal actions cannot colorably be said to have posed a "serious threat" to someone at his correctional institution or the institution itself, such that Hansmeier's administrative detention was colorably justified under 28 U.S.C. Part 541 Subpart B. The length of Hansmeier's administrative detention was approximately four times the average length of administrative detention for inmates at Sandstone;

    b. Charged Hansmeier with Prohibited Acts 196 and 204, use of the mails for an illegal purpose and extortion, respectively. Had Hansmeier been found guilty of committing these Prohibited Acts, Hansmeier would have lost significant good time, been subject to a disciplinary transfer to an institution far away from Minnesota, lost his privileges and faced other disciplinary sanctions including monetary fines and restitution. These charges served no legitimate public interest because

----------------------------------------------------------------------------------------------------

there was no evidence that Hansmeier was guilty of committing these prohibited acts. The Courts, and not the Bureau of Prisons, are best suited oversee Hansmeier's litigation. The Bureau of Prisons is permitted to file a motion to intervene if they wish to challenge Hansmeier's litigation;

    c. Attempted to subject Hansmeier to a retaliatory transfer (or "diesel therapy," as it is sometimes referred within the Federal Bureau of Prisons). Hansmeier is from Minnesota and receives visits from his family, including his wife, young children, parents and siblings. Federal law dictates that inmates should be housed within 500 miles of their release address (which, in Hansmeier's case, is in Minnesota) so as to foster family connections. The Bureau of Prisons ignored this law and attempted to subject Hansmeier to "diesel therapy" even after Hansmeier was found not guilty of the charges described above. If the Bureau of Prisons had succeeded in subjecting Hansmeier to diesel therapy, Hansmeier would have been isolated from his family. The Bureau of Prisons' attempted "diesel therapy" served no legitimate penological interest as there was no evidence that Hansmeier committed prohibited acts. Maintaining close community and family connections is an important component of reducing an inmate's risk of recidivism. The Bureau of Prisons' actions would have cut against this important policy interest with no offsetting benefit; and

    d. Interfered with Hansmeier's prosecution of the claims in this case by, for example, blocking Hansmeier from accessing information he needs to prosecute his claims in this case, including information that would assist Hansmeier in specifying the architectural barriers at issue in this case to the Owner and Operator Defendants, blocking Hansmeier from accessing U.S. District Court Judges' practice pointers and preferences on the grounds that these practice pointers and preferences pose a threat to institutional security and stopping by Hansmeier's cube to threaten him.

  116. Private actors have taken the following adverse action against Hansmeier and his clients:

    a. Presented false statements and claims to courts in an effort to impugn Hansmeier and his clients;

    b. Filed false claims with the Minnesota Attorney General in an effort to impugn Hansmeier and his clients;

    c. Filed false complaints with the Minnesota Lawyer's Board of Professional Responsibility in an effort to impugn Hansmeier and his clients; and

    d. Made false statements in the media about Hansmeier in an effort to impugn Hansmeier and his clients.

  117. As an incarcerated individual, Hansmeier is uniquely vulnerable to retaliation. Many of Hansmeier's freedoms are controlled by the government; any retaliatory actions taken by the government will take months, if not years, to address once they occur. The Federal Bureau of Prisons is understaffed and its employees are not trained in legal matters. A false report to the Federal Bureau of Prisons could easily fool Federal Bureau of Prisons staff, who have demonstrated an inclination to take adverse action against Hansmeier based on his petitioning activities. Addressing a false report could take months, if not years. In many instances there is no practical redress for unlawful retaliation.

  118-119. [Reserved].

G. Hansmeier's Course of Conduct/the Covered Activity.

  120. Hansmeier's course of conduct will involve engaging in the Covered Activity. The Covered Activity will involve the petitioning activity in this case, pairs testing at the Facility and aiding and encouraging people with disabilities to enforce their rights under the ADA against the Owner and Operator Defendants with respect to discriminatory conditions revealed by Hansmeier's pairs testing.

  121. Hansmeier's petitioning activity in this case will involve filing this complaint, serving the Defendants, opposing any motions to dismiss, participating in discovery, filing a motion for summary judgment/opposing any such motion filed by Defendants, participating in trial to resolve any material disputes of fact and opposing Defendants' appeal. Though Hansmeier intends to take positions in this case that are supported by judicial precedent, this conduct has subjected Hansmeier to retaliation and adverse action under the Challenged Restrictions from the Attorney General and private defendants.

  122. After Hansmeier has cleared away architectural barriers to pairs testing, Hansmeier plans to coordinate pairs testing at the Facility. Hansmeier's pairs testing will involve a person with a disability and a person without a disability visiting the Facility and patronizing it to determine whether the individual with a disability experiences inferior treatment on account of their disability. Hansmeier's pairs testing will involve aiding and encouraging people with disabilities to enforce their rights under state and federal accessibility laws. This conduct has subjected Hansmeier to retaliation and adverse action under the Challenged

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

Restrictions from the Attorney General and private defendants.

123. To the extent that Hansmeier's pairs testing reveals discriminatory conditions at the Facility, then Hansmeier would like to aid and encourage his pairs testers to enforce their rights under state and federal accessibility laws against the Owner and Operator Defendants. This conduct has subjected Hansmeier to retaliation and adverse action under the Challenged Restrictions from the Attorney General and private defendants.

124-129 [Reserved].

H. Hansmeier's First Amendment Injuries.

130. Hansmeier is injured because is placed in the position of either refraining from engaging in the Covered Activity, which involves First Amendment protected petitioning activity or activity that is closely related to petitioning activity, or of exposing himself to the risk of retaliation and prosecution, civil liability and other adverse consequences under the Challenged Restrictions. By refraining from engaging in this conduct, Hansmeier would be self-censoring and would thus be suffering a loss of his First Amendment rights.

131. As applied to Hansmeier, the Challenged Restrictions chill Hansmeier's participation in the Covered Activity because: (1) Hansmeier is placed in reasonable fear of retaliation and prosecution and civil liability under the Challenged Restrictions; (2) Hansmeier must alter his participation in the Covered Activity in a manner that reduces its effectiveness; or (3) Hansmeier must refrain from engaging in the Covered Activity to avoid retaliation and adverse action under the Challenged Restrictions.

132-139. [Reserved].

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Complaint - 5/5
DATE: 02/11/2022 06:43:27 AM

. I. The Owner and Operator Defendants Are Violating the Americans With Disabilities Act.

140. The Americans With Disabilities Act ("ADA") provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a).

141. The Owner and Operator Defendants are discriminating against people with disabilities who require the use of mobility devices.

142. Under the ADA, a person discriminates by failing to remove architectural barriers. 42 U.S.C. 12182(b)(2)(A)(iv).

143. The Facility contains the architectural barriers specified in the Report attached hereto as Exhibit A.

144. These architectural barriers deny people with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Facility because they make the Facility more difficult and dangerous for people with disabilities who require the use of mobility devices.

145. The Owner and Operator Defendants own the real estate from which the Facility operates and operate the Facility, respectively.

146-49. [Reserved].

J. The Owner and Operator Defendants Are Violating the Minnesota Human Rights Act.

150. The Minnesota Human Rights Act ("MRHA") prohibits public accommodations from discriminating against people on the basis of disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages of a public accommodation" on account of disability. Minn. Stat. 363A.11 Subd. 1(a)(1).

151. The Owner and Operator Defendants are discriminating against people with disabilities who require the use of mobility devices.

152. Under the MHRA, a person engages in discrimination by failing to "remov[e] architectural barriers...." Minn. Stat. 363A.11 Subd. 3(4).

153. The Facility contains the architectural barriers specified and depicted on Exhibit A hereto.

154. These architectural barriers deny people with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Facility because they make the Facility more difficult and dangerous for people with disabilities who require the use of mobility devices.

155. The Owner and Operator Defendants own the real estate from which the Facility operates and operate the Facility, respectively.

156-59. [Reserved].

K. The Court Should Enjoin Defendants From Coercing, Intimidating, Threatening or Interfering With Hansmeier.

160. The ADA provides that it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act." 42 U.S.C. 12203.

161. Hansmeier has been subject to extensive coercion, intimidation, threats and interference on account of having aided and encouraged other individuals in the exercise or enjoyment of their rights to access public accommodations and has a

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

----------------------------------------------------------------------------------------------------

credible fear that he will suffer the same from Defendants on account of his participation in the Covered Activity.

162. [Reserved].

L. The Court Should Enjoin the Government Defendants From Retaliating Against Hansmeier.

163. The First Amendment prohibits the Government from retaliating against citizens based on their participation in First Amendment protected activity.

164. The Covered Activity is First Amendment protected activity as it involves petitioning activity that is protected by the Petition Clause of the First Amendment.

165. The Government Defendants have retaliated against Hansmeier in the past based on Hansmeier's participation in activity similar to the Covered Activity.

166. The Government Defendants' retaliation would chill a person of ordinary firmness.

167. The Court should enjoin the Government Defendants from retaliating against Hansmeier.

168-169. [Reserved].

M. The Challenged Restrictions Violate the First Amendment (as applied).

170. The Challenged Restrictions violate the First Amendment as applied to the Covered Activity. The Covered Activity is protected petitioning activity which, according to Defendants, are rendered unlawful by the Challenged Restrictions. But such conduct enjoys First Amendment protection.

171. The freedom to petition the courts for relief and engage in conduct within the breathing space of such petitioning activity is of paramount public importance and entitled to full protection under the First Amendment. Hansmeier should not be restricted from participating in the Covered Activity.

172. As applied to the Covered Activity, the Challenged Restrictions fail strict scrutiny. Far from having a compelling interest in preventing Hansmeier's petitioning activity, society has an interest in ensuring the enforcement of anti-discrimination laws and in citizens availing the courts to resolve their disputes rather than resorting to self-help remedies.

173. Concerns about state and federal accessibility litigation are more adequately served through the democratic process and advocacy in court.

174-179. [Reserved].

N. The Challenged Restrictions Are Vague, In Violation Of The Due Process Clause (as applied).

180. As applied to the Covered Activity, the Challenged Restrictions are void for vagueness.

181. The Challenged Restrictions fail to notify ordinary people that the Covered Activity is criminal or otherwise wrongful because the text of the Challenged Restrictions does not provide adequate notice that an individual must refrain engaging in the Covered Activity.

182. The plain meaning of the phrases "scheme to defraud," "extortion," "racketeering" and "use of the mails for an illegal purpose" does not clearly cover instances where someone engages in disability rights enforcement activity (including petitioning activity and pairs testing) that is common across the rest of the United States.

183. As applied to the Covered Activity, the Challenged Restrictions chill petitioning activity and conduct that is closely related to petitioning activity. Accordingly, the Due Process Clause requires a heightened degree of statutory specificity. The vagueness of the Challenged Restrictions fails to give reasonable notice of what conduct is prohibited, invites arbitrary and discriminatory enforcement, and deters constitutionally-protected petitioning activity. As applied to the Covered Activity, the Challenged Restrictions thus violate the Due Process Clause.

184-189. [Reserved].

-------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Complaint - 6/5
DATE: 02/11/2022 07:15:02 AM

V. First Cause of Action - Americans With Disabilities Act (Title III).

190. Hansmeier re-alleges and incorporates by reference all allegations set forth above.

191. The Owner and Operator Defendants are discriminating against people with disabilities by failing to remove architectural barriers from the Facility.

192. The Owner and Operator Defendants' discrimination is preventing people with disabilities from participating in the full and equal enjoyment of the Facility's goods, services, facilities, privileges, advantages or accommodations.

193. The Facility is a public accommodation.

194. The Owner and Operator Defendants own the real estate from which the Facility operates and operate the Facility, respectively.

195. The Owner and Operator Defendants are violating Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, et seq.

196-199. [Reserved].

VI. Second Cause of Action - Minnesota Human Rights Act.

200. Hansmeier re-alleges and incorporates by reference all allegations set forth above.

201. The Owner and Operator Defendants are discriminating against people with disabilities within the meaning of Minnesota Statute 363A.11 by failing to remove architectural barriers from the Facility.

202. The Owner and Operator Defendants' discrimination is preventing people with disabilities from participating in the full and equal enjoyment of the Facility's goods, services, facilities, privileges, advantages or accommodations.

203. The Facility is a public accommodation.

204. The Owner and Operator Defendants own the real estate from which the Facility operates and operate the Facility, respectively.

205. The Owner and Operator Defendants are violating the Minnesota Human Rights Act.

206-209. [Reserved].

VII. Third Cause of Action - Americans With Disabilities Act (Participation Clause).

210. Hansmeier re-alleges and incorporates by reference all allegations set forth above.

211. The Americans With Disabilities Act's participation clause provides that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided and encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the [Americans With Disabilities Act]." 42 U.S.C. 12203(b).

212. Hansmeier has a credible fear that Defendants will coerce, intimidate, threaten, or interfere with him on account of his participation in the Covered Activity.

213. Hansmeier's credible fear is rooted in his experience of being coerced, intimidated, threatened or interfered on a routine basis in connection with engaging in similar activity.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------

214. The threat of coercion, intimidation, threats and interference causes ongoing and irreparable harm to Hansmeier who has no adequate remedy at law. Absent immediate injunctive relief, Hansmeier will continue to suffer irreparable harm.

215-219. [Reserved].

VIII. Fourth Cause of Action - First Amendment (Retaliation).

220. Hansmeier re-alleges and incorporates by reference all allegations set forth above.

221. The First Amendment prohibits retaliation against persons on account of their exercising their rights under the First Amendment.

222. Hansmeier has a credible fear that the Government Defendants will take adverse action against him on account of him participating in the Covered Activity.

223. The Government Defendants' adverse actions would chill a person of ordinary firmness.

224. The Government Defendants' expected adverse actions are not justified by social, law enforcement or penological interests.

225. The threat of First Amendment retaliation causes ongoing and irreparable harm to Hansmeier who has no adequate remedy at law. Absent immediate injunctive relief, Hansmeier will continue to suffer irreparable harm.

226-229. [Reserved].

IX. Fifth Cause of Action - First Amendment (Petition Clause).

230. Hansmeier re-alleges and reincorporates by reference all allegations set forth above.

231. The Petition Clause of the First Amendment provides that "Congress shall make no law abridging the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I.

232. As applied to the Covered Activity, the Challenged Restrictions impermissibly interfere with and prohibit protected petitioning activity.

233. As applied to the Covered Activity, the Challenged Restrictions are not narrowly tailored to achieve a legitimate, compelling, or overriding government interest.

234. As applied to the Covered Activity, the Challenged Restrictions violate the Petition Clause of the First Amendment.

235. The Challenged Restrictions cause ongoing and irreparable harm to Hansmeier who has no adequate remedy at law. Absent immediate injunctive relief, Hansmeier will continue to suffer irreparable harm.

236-239. [Reserved].

X. Sixth Cause of Action - Fifth Amendment (As Applied).

240. Hansmeier re-alleges and reincorporates by reference all allegations set forth above.

241. The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that: "No person shall ... be deprived of life, liberty or property without due process of law."

242. The Challenged Restrictions, as applied to the Covered Activity, are unconstitutionally vague as they fail to define a criminal offense in a manner definite enough to notify an ordinary person what conduct is prohibited and/or encourage arbitrary and discriminatory enforcement.

243. The vagueness of the Challenged Restrictions chills and deters petitioning activity that is protected under the First Amendment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

244. As applied to the Covered Activity, the Challenged Restrictions violate the Due Process Clause of the Fifth Amendment. This violation causes ongoing and irreparable harm to Hansmeier who has no adequate remedy at law. Absent immediate injunctive relief, Hansmeier will continue to suffer irreparable harm.

245-249. [Reserved].

## PRAYER FOR RELIEF

Hansmeier respectfully requests a judgment:

1. Declaring that the Facility is associated with unlawful architectural barriers in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. 12181, et seq., and that the Owner and Operator Defendants' conduct and/or inaction constitutes an unfair discriminatory practice under the Minnesota Human Rights Act;

2. Permanently enjoining the Owner and Operator Defendants, pursuant to 42 U.S.C. 12188(a)(2), 28 C.F.R. 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3, from continuing their discriminatory practices, including orders directing the Owner and Operator Defendants to remove physical barriers to access and make the Facility fully accessible to and independently usable by individuals with disabilities to the extent required by the Americans With Disabilities Act and the Minnesota Human Rights Act and requiring the Owner and Operator Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis;

3. Ordering the Owner and Operator Defendants to pay a civil penalty to the State of Minnesota pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4;

4. Awarding Hansmeier damages, to be paid by the Owner and Operator Defendants, pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4;

5. Declaring that, as applied to the Covered Activity, the Challenged Restrictions violate the Petition Clause of the First Amendment to the United States Constitution and the Due Process Clause of the Fifth Amendment to the United States Constitution;

6. Permanently enjoining the Defendants, as well as their officers, agents, employees, attorneys, and all other persons in active concert or participation with them, from enforcing or threatening to enforce the Challenged Restrictions against Hansmeier based on Hansmeier's participation in the Covered Activity;

7. Permanently enjoining Defendants, as well as their officers, agents, employees, attorneys, and all other people in active concert or participation with them, from coercing, intimidating, threatening, interfering or retaliating against Hansmeier on account of his participation in the Covered Activity;

8. Awarding Hansmeier's attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. 2142, the Americans With Disabilities Act, 42 U.S.C. 12205, and the Minnesota Human Rights Act, Minn. Stat. 363A.33, Subd. 7;

9. Ordering that Hansmeier be placed on home confinement pending his completion of the Covered Activity; and

10. Awarding such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Hansmeier demands a jury trial on all issues so triable.

Dated: March 4, 2022

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: Tavern Report
DATE: 03/02/2022 07:36:29 PM

Exhibit A - Tavern Accessibility Report

The parking spaces that are nominally reserved for people with disabilities do not comply with any aspect of the Americans With Disabilities Act. The spaces are uneven, are not flanked by access aisles, do not appear to be on the shortest accessible route and otherwise fail to comply with the Americans With Disabilities Act. They appear to be unusable by someone who requires the use of a wheelchair for mobility. To the extent they are usable, they are dangerous because, for example, someone transferring from their vehicle to their wheelchair could be blocked from returning to their vehicle by a later-arriving car that parks in the space that should be reserved for an access aisle. Alternatively, the spaces are uneven, which significantly increases the risk of a fall during transfer. The spaces need to be completely redone in order to comply with the requirements of the Americans With Disabilities Act. Photos of the spaces are attached hereto.



