RECEIVED BY MAIL
JUN 30 2022
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
JUN 30 2022
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PAUL Hansmeier,
   Plaintiff,

v.

HRP Woodbury II, LLC et al,
   Defendants.

Case No. 22-cv-820 (ECT)

REPLY IN SUPPORT OF MOTION TO PROCEED IN FORMA PAUPERIS

Defendant Store Master Funding VII, LLC's opposition to Hansmeier's motion to proceed without prepaying costs and appellate filing fees raises three issues:

(1) In *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010-11 (8th Cir. 2018), the Eighth Circuit reversed a district court, which, like this Court did, dismissed claims that were removed from Hennepin County District on the grounds of lack of standing, reasoning that 28 U.S.C. § 1447(c) required the district court to remand those claims instead of dismissing them. On appeal, Hansmeier will argue, among other issues, that this Court erred by dismissing Hansmeier's claims against the non-government defendants for lack of standing instead of remanding them. Is Hansmeier's appeal frivolous?

(2) Hansmeier's motion to proceed in forma pauperis was accompanied by the same documentation that Hansmeier has submitted in other successful in forma pauperis applications in this district and beyond. Has Store Master Funding VII identified a material deficiency in Hansmeier's application in this case?

(3) Hansmeier was able to pay the appellate filing fee in the <u>Hansmeier v. Tobies Enterprises, Inc.</u> appeal due to the generosity of third parties. Is Hansmeier precluded from proceeding in forma pauperis in this appeal because of the third parties' generosity in the <u>Tobies</u> appeal?

Hansmeier addresses these issues below, respectively.

I. <u>Hansmeier's appeal raises non-frivolous issues.</u>

Store Master Funding <u>VII</u>'s response does not explain why it is frivolous for Hansmeier to argue that the Court erred by dismissing Hansmeier's claims against the non-government defendants instead of remanding them, as 28 U.S.C. § 1447(c) and the Eighth Circuit's decision in <u>Hillesheim</u> expressly require. Indeed, Store Master Funding <u>VII</u>'s response offers no defense of the Court's actions at all. Store Master Funding <u>VII</u> does not meet its burden of establishing the frivolousness of this issue.

Hansmeier's second issue on appeal will challenge the Court's determination that Hansmeier's claims in this case are covered by Chief Judge Tunheim's filing restriction, given that Hansmeier never initiated claims against the Attorney General and that Chief Judge Tunheim's filing restriction does not, on its face, apply to claims that are removed from state court. Hansmeier would note that, for all of her adverse rulings against Hansmeier, Judge Brasel never found that Hansmeier's claims were covered by Chief Judge Tunheim's filing restriction. Store Master Funding <u>VII</u>'s response offers no defense of the Court's decision, much less a showing why Hansmeier's second issue on appeal is frivolous. Store Master Funding <u>VII</u> does not meet its burden of establishing the frivolousness of this issue.

Hansmeier's third issue on appeal will contest the Court's power to prevent the Clerk of Court from filing Hansmeier's post-judgment motion to amend the complaint. Store Master VII's response does not even argue that the Court had the power to do what it did and therefore does not meet its burden of establishing that Hansmeier's third issue on appeal will be frivolous.

Store Master Funding VII's response boils down to an argument that if Chief Judge Tunheim, Judge Brasel and this Court dismissed Hansmeier's claims, then Hansmeier's claims must be frivolous. What is enormously revealing about this argument is that Store Master Funding VII cannot, despite three rulings from federal district court judges, find a single reason for dismissal that would doom Hansmeier's claims in this case. A claim-by-claim analysis of the claims in Hansmeier's complaint reveals why this is true.

A. First Cause of Action - Americans With Disabilities Act (Title III).

To state a prima facie case under Title III, a plaintiff must show: (1) discrimination on the basis of disability; (2) in the full and equal enjoyment of the goods, services, privileges, advantages, or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator. Over three hostile judicial opinions there has never been even a single suggestion that Hansmeier's ADA claims have lacked merit. Nor could there be. In this case, for example, it is undisputed that the non-government defendants are public accommodations and it cannot seriously be contested that the parking lot conditions depicted in the Exhibit to the complaint are blatant violations of the ADA. A person who requires the use of a wheelchair for mobility, upon visiting the Tavern restaurant in Woodbury MN, would first have difficulty finding a space that is reserved for accessible

parking because all of the signs are posted too low. Once a space was located (and hopefully the accessible parking spaces are not occupied by people without disabilities who inadvertently parked in them because they missed the sign, which was posted too low), the person now needs to transfer to their wheelchair. This will be difficult-to-impossible because the spaces lack access aisles, i.e. the often diagonally striped space adjacent to an accessible parking space. The person will have to hope that the parking space next to where they find an accessible parking space is open — though even that would be dangerous because a car could easily pull into that space during the transfer and hit the person in the wheelchair, who, after all, has a low, difficult-to-spot profile. Moreover, the person faces the risk that a later arriving patron will park in the space next to theirs and block them in. If the person decides to risk the transfer they will now face an uneven, excessively sloped and poorly maintained (in terms of upkeep and snow removal) transfer space, which creates a significant risk of the wheelchair moving during the transfer, leading to a fall. If the person manages to successfully transfer to their car without falling or being hit by a car, now they have to get inside. This will be difficult because there are no routes from the parking spaces to the inside of Tavern restaurant that comply with the requirements for accessible routes. The person would be facing a bumpy, uneven and excessively sloped trip from their car to the restaurant. In summary, to park and enter the restaurant, a person who requires the use of a wheelchair for mobility will have to risk serious injury or worse, seek the assistance of a third party or find another place to eat. The conditions described above, alleged in the complaint and summarized and depicted in the exhibits thereto are bright line violations of the Americans With Disabilities Act architectural requirements, codified at 36 C.F.R. Part 1191 App. D § 502 (discussing the architectural requirements for parking lots). It should be mentioned that it is very easy to comply with these requirements and many Minnesota businesses do. Instead of making the minimal investment needed to address these issues, Store

Master Funding VII is investing its resources in opposing a motion to proceed in forma pauperis. Hansmeier's ADA claim has merit because the allegations and evidence in Hansmeier's complaint show that the Tavern defendants are public accommodations that are discriminating against people with disabilities by refusing to take the simple steps needed to comply with the ADA's architectural requirements for parking lots. This denies people with disabilities the opportunity to go in and have a meal at Tavern on a full and equal basis. The defendants could easily correct those issues, but are choosing not to.

As for standing, the Court's standing determination conflicts with the Supreme Court's decision in Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) the Eighth Circuit's decision in National Federation of the Blind of Missouri v. Cross, 184 F.3d 973 (8th Cir. 1999) and other similar decisions in this line. At the pleading stage, courts review the factual allegations in the complaint, and "presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695 (1990). The Eighth Circuit has reinforced this treatment of standing at the pleading stage. See, e.g., Carlsen v. Game Stop, 833 F.3d 903 (8th Cir. 2016).

To satisfy Article III's standing requirements, Hansmeier must plead an injury in fact caused by the Tavern defendants' ADA violations and that is redressable by them. Hansmeier's complaint alleges that these ADA violations have and are injuring him by making the pairs testing operation he would like to imminently coordinate against Tavern physically impossible or, in the alternative, prohibitively expensive — Hansmeier's pairs testers with disabilities cannot safely park at and enter Tavern in light of Tavern's refusal to comply with the ADA architectural requirements for parking lots.

Hansmeier has to either refrain from coordinating pairs testing at Tavern or somehow retain, with money he does not have, someone to assist his pairs testers park at and enter Tavern. Hansmeier's complaint further alleges that Tavern's ADA violations have forced Hansmeier to divert time and other resources that he could have otherwise spent on coordinating pairs testing at other public accommodations, thus further impairing Hansmeier's overarching mission of helping people with disabilities gain equal access to society. Substantially similar allegations sufficed in Havens Realty and would suffice in any modern judicial decision interpreting Havens Realty. Any suggestion that Hansmeier lacks Article III standing is foreclosed by Supreme Court and Eighth Circuit precedent and the persuasive decisions of federal appellate and district courts nationwide.

To Hansmeier's knowledge, every court to address the issue (at least every court that has accepted the benefit of adversary presentation) has accepted comparable allegations as satisfying the requirements of pleading stage Article III standing, though some have raised prudential standing as a possible bar to suit. Hansmeier overcomes this possible barrier, which is specific to his ADA claim and does not present itself with respect to his MHRA claim, via the doctrine of third-party standing. In addition to alleging Article III standing, Hansmeier's complaint contains more-than-adequate allegations to satisfy the "closeness" (Hansmeier is linked to his pairs testers with disabilities via the ties of professional relations, shared interests, common objectives and friendship) and "obstacle" prongs (Hansmeier's pairs testers with disabilities face criminal sanctions, difficulty in obtaining counsel, judicial hostility, physical threats and media backlash — all of which Hansmeier is willing to bear for this important cause) of the test for prudential standing.

Because Hansmeier meets the requirements for Article III standing, prudential standing and the merits, Hansmeier's defense on appeal of his ADA claim will be non-frivolous. Store Master Funding VII's opposition memorandum makes no contrary showing.

### B. Second Cause of Action - Minnesota Human Rights Act.

Hansmeier's Minnesota Human Rights Act claim is very similar to his ADA claim, but with two key differences. First, due to a textual difference between the Minnesota Human Rights Act and the ADA, there is no prudential standing limitation with respect to Hansmeier's Minnesota Human Rights Act claim and Store Master Funding VII's response makes no contention otherwise. Second, the Minnesota Human Rights Act claim includes a demand for damages, which makes the Article III standing analysis even more straightforward. Again, Store Master Funding VII offers no contest to this straight-forward showing.

### C. Third Cause of Action - ADA Participation Clause

42 U.S.C. § 12203(b) prohibits coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided and encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Americans With Disabilities Act. The gravamen of Hansmeier's claim is that he has been subject to regular retaliation by the defendants in the ADA lawsuits he has been associated with in the past and on that basis fears retaliation meeting the definition of 42 U.S.C. § 12203(b) from the defendants in this case. Hansmeier has not had to wait long for the retaliation to commence. Store Master

Funding VII has already started targeting Hansmeier with such conduct. Store Master Funding's characterization of Hansmeier's appeal as frivolous — even though that Hansmeier is almost certain to prevail, at a minimum, on the remand issue in light of Hillesheim — is highly unethical and even criminal. In United States v. Hansmeier, the Eighth Circuit held that the defendant committed mail fraud and wire fraud by making material misstatements and omissions in litigation documents, where the standard for materiality is whether a misstatement/omission could influence a judge's decision making. Here, had Store Master Funding VII been candid with the Court and conceded that Hansmeier's appeal will involve substantial issues — if not issues for which Eighth Circuit precedent mandates reversal — the Court could certainly be expected to view Hansmeier's motion to proceed in forma pauperis more favorably. If the U.S. Attorney went to a Grand Jury with the facts of Store Master Funding VII's conduct in connection with the litigation over Hansmeier's in forma pauperis application, then he would easily obtain an indictment and a conviction for mail and wire fraud. Store Master Funding VII's early resort to this misconduct is a clear indication of why Hansmeier's participation clause claim is so critical in this case.

### D. Fourth Cause of Action — First Amendment Retaliation

Hansmeier can establish a claim for First Amendment retaliation by showing that the government will take adverse action against Hansmeier on account of his participation in First Amendment protected activity, including petitioning activity, and that the adverse action would chill a person of ordinary firmness. Hansmeier's complaint details the prior adverse actions the government has taken against him on account of his ADA petitioning activity — including threats of criminal prosecution, which would chill a person of ordinary firmness and being thrown in the "Hole" for six months — and requests an injunction to prevent the government from doing these things in this case.

Judge Brasel dismissed Hansmeier's First Amendment retaliation claim because it did not meet Bivens' requirements and because it violated the Heck doctrine. The simple response to the Bivens basis for dismissal is that Hansmeier's First Amendment retaliation claim is not a Bivens claim and is thus not subject to Bivens's requirements. A Bivens claim is a claim against a federal official in their individual capacity which seeks to hold a federal official personally responsible for constitutional violations. Hansmeier's claim, in contrast, is a claim brought against the Attorney General in his official capacity pursuant to the United States' waiver of sovereign immunity under 5 U.S.C. § 702, in which the government waived immunity against claims for declaratory or injunctive relief. Bivens' requirements do not apply to Hansmeier's claims against the government.

As for Heck, Heck applies to and blocks claims which, if successful, would necessarily imply the invalidity of a criminal conviction. Hansmeier was not criminally prosecuted for bringing ADA actions, so there is no criminal conviction that would be disturbed by Hansmeier's success on his First Amendment retaliation claim.

### E. Remaining Causes of Actions — Preenforcement Challenges to Federal Statutes and Regulations.

Hansmeier's remaining causes of actions are preenforcement challenges to certain federal statutes and regulations. Judge Brasel dismissed those claims for failing to meet the requirements of Bivens and Heck, but for the reasons just stated, neither Bivens nor Heck have any colorable connection to this case. Store Master VII does not explain why they would.

Hansmeier's appeal states non-frivolous issues.

II. <u>Hansmeier's motion establishes Hansmeier's indigency.</u>

Hansmeier's motion establishes Hansmeier's indigency. Store Master VII's formalistic objections do not rebut Hansmeier's showing, which was recently held sufficient in <u>Hansmeier v. Fikes</u>, No. 21-cv-1979 (D. Minn.). The bottom line is that Hansmeier owes $1.5 million and is in a position where he earns ~$14/month. The government has a lien over everything Hansmeier owns and Hansmeier will be destitute until he pays off the judgement. Hansmeier has paid $75,000 to date. Hansmeier has submitted his prison trust account statement, which shows that Hansmeier leads a frugal lifestyle. It is unclear what other non-redundant information Hansmeier can submit.

III. <u>Hansmeier's filing fee in the Tobies appeal was paid with the funds of others</u>

Hansmeier received generous assistance from others to pay the filing fee in the Tobies matter. Store Master VII does not show that this disqualifies Hansmeier from proceeding IFP in this matter.

Dated: June 27, 2022

Paul Hansmeier
L0953-041 Unit F
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072